**Carmen ARCHULETA,
Plaintiff–Appellant,**

v.

**The COLORADO DEPARTMENT OF INSTITUTIONS, DIVISION OF YOUTH SERVICES, et al., Defendants–Appellees.**

**No. 89–1370.**

United States Court of Appeals,
Tenth Circuit.

June 20, 1991.

Richard C. LaFond and Jay Khandke, Denver, Colo., for plaintiff-appellant.

Carolyn Lievers, Deputy Atty. Gen., Human Resources Section (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., and Richard H. Forman, Sol. Gen., with her on the brief), Denver, Colo., for defendants-appellees.

Before HOLLOWAY, Chief Judge, and BARRETT, Circuit Judge, and BROWN,* District Judge.

WESLEY E. BROWN, District Judge.

Plaintiff-appellant Carmen Archuleta was terminated from her job with the Colorado Department of Youth Services. She filed suit in the district court against her former employer and supervisors. Plaintiff asserted various claims, including a

---

* The Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

claim that the defendants retaliated against her for filing a prior sex discrimination complaint (42 U.S.C. § 2000e–3), a claim for sexual harassment amounting to a constructive discharge (42 U.S.C. § 2000e–2), as well as claims for deprivation of the right to procedural and substantive due process (42 U.S.C. § 1983). The district court dismissed the claim under § 2000e–2 because the plaintiff had not submitted it first to the EEOC. The court also granted the defendants' motion to dismiss the § 1983 claims. The claim for retaliation was tried to the court. After hearing all of the evidence, the court held that the plaintiff had failed to show that the defendants retaliated against her because of the prior sex discrimination complaint. Plaintiff appeals the district court's entry of judgment on these claims in favor of the defendants. We affirm.

Plaintiff began working as a Youth Service Worker in June of 1974. She consistently received standard or above standard job performance evaluations from her supervisors, defendants Grant and Davis. In February of 1979, plaintiff received her first below standard evaluation. In subsequent months she received two more substandard evaluations, and, after a hearing with her appointing authority, the department terminated her employment. Plaintiff appealed her termination to the Colorado State Personnel Board. In that proceeding, she alleged that she had been terminated without cause and had been discriminated against on account of her sex. A hearing officer determined that the department had dismissed the plaintiff without cause. The hearing officer found that the defendant Davis had acted with maliciousness and bad faith toward the plaintiff in giving her unjustifiably low performance evaluations. Addendum to App. Brief at 11. The hearing officer also found that plaintiff's claim of sex discrimination was not supported by the evidence. *Id.* at 8–11. The officer ordered the department to reinstate the plaintiff and suggested that she be placed with a different supervisor. *Id.* at 12.

Plaintiff was reinstated in October of 1980. She was given a new supervisor and was assigned to a juvenile detention unit for boys. Plaintiff alleged that numerous instances of sexual harassment occurred at this center.[1] After numerous requests, she was transferred to Lookout Mountain, a facility for female juveniles. Plaintiff was diagnosed as being pregnant in March 1985. She took maternity leave in July of 1985 and returned to work on January 27, 1986. The parties' accounts of the plaintiff's return to work after her maternity leave differ in several respects. The plaintiff contends that she found out after working on January 27th that she was supposed to work a double shift the next day. When plaintiff went home on January 28th, however, she found that her baby was sick. Plaintiff called her supervisor to tell him that she could not work the shift that evening because her baby was sick and also because her doctor had given her a note stating that she should not be working double shifts. Plaintiff contends that the supervisor accused her of faking the note and then told her to bring the baby to work if there was no other alternative. The defendants, on the other hand, contend that plaintiff was given her work schedule on January 13, two weeks before she returned to work. On January 28, plaintiff requested a schedule change and was told by her supervisor that the request would be considered for the next scheduling period. Shortly before plaintiff's January 29 shift was to start, she called her supervisor at his home and told him she could not come to work because she did not have a babysitter. The defendants contend there was no mention of the child being sick. The plaintiff's supervisor was forced to fill in for her. The defendants assert that the supervisor, a male, had to violate department policy by working the late shift at a facility for female juveniles. The supervisor tried several times during the shift to contact the plaintiff, but was told that she was unavailable. A man identifying himself as the plaintiff's attorney called the supervisor during the shift and argued with him

---

**1.** Plaintiff filed the instant suit in January of 1982.

about the plaintiff's schedule. The plaintiff subsequently called the supervisor and told him that she was on medical leave. Plaintiff did not report to work on January 29 or on February 1, which was her next scheduled shift. The facility director then sent plaintiff a letter of termination for not reporting to work as scheduled.

I. *Retaliation—42 U.S.C. § 2000e–3.*

The first issue raised by appellant is whether the district court erred in ruling against her on the claim for retaliation under 42 U.S.C. § 2000e–3. That section makes it unlawful for an employer to discriminate against an employee because of the employee's opposition to an employment practice made unlawful under Title VII or because of the employee's participation in an investigation, proceeding or hearing under Title VII. In order to establish a prima facie claim for retaliation, a plaintiff must show: 1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; 2) adverse action by the employer subsequent to the protected activity; and 3) a causal connection between the employee's activity and the adverse action. *Allen v. Denver School Board,* 928 F.2d 978 (10th Cir.1991). In this case, the plaintiff alleged that she engaged in protected activity by filing the sex discrimination complaint with the Colorado State Personnel Board after her termination in 1979. Plaintiff alleged that this activity prompted various employees of the Department to harass her after she was reinstated. Plaintiff further contended that her ensuing termination in 1986 was caused by this allegation of sexual discrimination in the 1980 complaint.

The plaintiff presented evidence of problems that occurred after her reinstatement in 1980. Based on this evidence, the district court determined that the plaintiff had made out a prima facie case of retaliation. The court was particularly concerned by the fact that plaintiff was assigned to a facility for male juveniles after she was reinstated. The defendants responded by producing evidence of the circumstances surrounding the alleged incidents of harassment and plaintiff's discharge and by asserting that plaintiff was dismissed for legitimate reasons. The plaintiff contended that these asserted reasons were a pretext for discrimination. After hearing all of the evidence, the court concluded that the plaintiff had not been retaliated against for filing a sex discrimination complaint. Although the court did not specifically determine whether the 1986 termination was justified, the court found that the termination was not caused by the prior sex discrimination charge. Tr. IV at 131. The court indicated that some of the plaintiff's problems with the agency may have been caused by the hearing officer's findings that plaintiff had been unjustly fired in 1979 and that defendant Davis had acted maliciously in giving her low evaluations. The district court noted that some people in the agency did not agree with these findings. The court reiterated, however, that the prior sex discrimination complaint played no part in the plaintiff's subsequent problems with the department. *Id.* at 134–45.

Appellant contends that the district court erred because it ruled that by losing the sex discrimination claim in 1980, plaintiff was barred as a matter of law from showing retaliation. This argument misconstrues the district court's findings. After discussing the difficulties inherent in determining what motivates any conduct, the court concluded that the defendants did not retaliate for the claim of discrimination, stating: "But I am satisfied that it was not the sex discrimination charge which, after all, the hearing officer absolved the agency of, but it was the finding of malice and animus that was, at least for some of the persons acting on behalf of the agency, was somewhat influential." Tr. IV at 131. In response to an objection from plaintiff's counsel that the motivations of the agency could not be separated in this manner, the court explained that it was simply "contrary to logic ..., contrary to common sense ..., [and] contrary to human nature" to believe that the defendants retaliated after being absolved on the sex discrimination complaint. *Id.*

■ Clearly, a plaintiff need not be successful on an original charge of discrimination in order to have a valid claim of retaliation. *See Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1307 (10th Cir. 1980). There is no indication in the record, however, that the district court ruled that losing the sex discrimination complaint barred the plaintiff as a matter of law from showing retaliation. Rather, the court found that plaintiff failed to show as a factual matter that the adverse actions were taken because of the prior discrimination complaint. The determination of what motivates an employer's conduct is "both sensitive and difficult," and is treated as a pure question of fact subject to Rule 52(a)'s clearly erroneous standard. *Pitre v. Western Electric Company,* 843 F.2d 1262, 1266 (10th Cir.1988) (citing *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) and *Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). *See also Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 386 (10th Cir. 1984) (The determination of whether a causal connection exists between protected activity and an adverse employment action is subject to review under the "clearly erroneous" standard). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ The district court's determination that plaintiff was not retaliated against for filing the prior sex discrimination charge is not clearly erroneous. Appellant failed to show that her filing of a sex discrimination complaint played any part in the subsequent problems with her employer. As the district court indicated, there is some evidence in the record that personal animosity

may have played a part in the plaintiff's termination in 1986. Title VII prohibits discrimination based only on certain enumerated factors, however, one of which is an employee's opposition to sex discrimination. Title VII does not ensure that employees will always be treated fairly or that they will be discharged only for meritorious reasons. Although the dismissal of an employee without cause may contribute to an inference of unlawful discrimination, it does not require such a finding. In the instant case, there was testimony that the plaintiff "did not fit in" because she had taken on the department and prevailed on her claim that she was fired without cause. Some people in the department may have held a grudge against the plaintiff because of that ruling. Be that as it may, plaintiff's allegation in 1980 that she was fired without cause in violation of departmental regulations was not an activity protected by Title VII.[2] There was a noticeable lack of evidence tying any of the plaintiff's problems to the 1980 claim of sex discrimination. As the district court noted, the hearing officer exonerated Davis on the charge of sex discrimination. Although retaliation could occur whether or not the plaintiff prevailed on this claim, the record bears no suggestion that plaintiff's supervisors bore a grudge against her for alleging sex discrimination. After her reinstatement, plaintiff had no contact at all with her former supervisors. There was testimony which, if believed, indicated that the Division of Youth Services does not discriminate against its employees on the basis of sex. There was some evidence that the plaintiff had personality conflicts with several co-workers, both male and female. In sum, there was a lack of direct or circumstantial evidence to support the plaintiff's claim. The problems that arose after plaintiff's reinstatement in 1980 occurred

**2.** Appellant contends that under Title VII it was unlawful for the defendants to take any action against her arising out of her participation in the 1980 personnel hearing. Section 2000e–3 is not so broad, however. It prohibits discrimination against an employee because the employee participated "in any manner in an investigation, proceeding, or hearing *under this subchapter.*" 42 U.S.C. § 2000e–3. "This subchapter" refers

to subchapter VI (Equal Employment Opportunities) of Chapter 21 on Civil Rights. To the extent appellant alleged in 1980 that she was terminated without cause in violation of state regulations, the personnel hearing was *unrelated to Title VII's provisions against discrimination* and was not a proceeding within the purview of § 2000e–3.

under different supervisors and bore no apparent relationship to the charge of sex discrimination. Taken as a whole, the record does not establish that any actions taken against the plaintiff were in retaliation for activity protected under Title VII.

## II. *Sex Discrimination—42 U.S.C. § 2000e–2.*

■ Appellant's next contention deals with her claim of sex discrimination under § 2000e–2. Appellant states that this claim was based on both pregnancy and sex discrimination. The district court ruled that to the extent she was not alleging retaliation, plaintiff had to submit this claim to the EEOC before pursuing it in court. Appellant contends this was error because the § 2000e–2 claim was reasonably related to charges previously filed with EEOC. *Citing Brown v. Hartshorne Public School District #1*, 864 F.2d 680, 682 (10th Cir. 1988) (Judicial relief may be sought without exhausting administrative remedies if the discrimination alleged is reasonably related to a charge already submitted to EEOC). We agree with the district court that the allegations here raised matters unrelated to plaintiff's prior EEOC charge. Plaintiff explained to the district court that the § 2000e–2 claim encompassed two allegations: 1) that after being reinstated plaintiff was harassed in retaliation for engaging in protected activity, and 2) that after 1980 the defendants engaged in pregnancy-based sex discrimination and sexual harassment that amounted to a constructive dis-

charge. Tr. VI at 10–11. The plaintiff's first allegation was the subject of her claim under § 2000e–3. Plaintiff was allowed to go forward on the retaliation claim and presented all of the evidence in support of that claim to the court. Thus, the court did not err in dismissing the claim under § 2000e–2 insofar as it was based on retaliation. Moreover, we agree with the district court that plaintiff's second allegation, concerning sexual harassment and pregnancy-based discrimination that was not retaliatory in nature, raised matters that were unrelated to plaintiff's prior EEOC complaint. The allegation that a new supervisor at a different facility engaged in sexual harassment or pregnancy-based discrimination in 1986 was not shown to be reasonably related to the issues raised in the EEOC complaint dealing with plaintiff's 1980 termination.

## III. *Substantive Due Process—42 U.S.C. § 1983.*

■ Appellant's final argument is that the court erred in dismissing her claim under 42 U.S.C. § 1983 for deprivation of the right to substantive due process.[3] This claim was brought against defendants Grant and Davis, plaintiff's former supervisors, and was based on the low job evaluations plaintiff received in 1979. Appellant contends that the defendants' evaluations were malicious and caused her appointing authority to terminate her employment in 1980.[4] Appellant argues that Grant and

---

3. Appellant initially alleged that she was also deprived of a right to procedural due process after she was reinstated in 1980. That argument was waived by appellant's counsel at oral argument.

4. The plaintiff alleged that the performance evaluations written and adopted by defendants Davis and Grant were arbitrary and that these evaluations led to her termination in 1980. Although it is not in the record before us, the parties apparently stipulated in the district court that the opinion of the hearing officer would serve as evidence of what happened in 1979. Because of this and because there is no contrary evidence in the record, we assume for purposes of this opinion that the plaintiff's allegations are true—i.e. that Davis' substandard evaluations of the plaintiff were unfounded and arbitrary and that these led to her termination in 1980.

The district court indicated that plaintiff could not state a claim against Grant and Davis because they did not have the authority to fire the plaintiff. Only her appointing authority had such authority. An individual may be liable under § 1983, however, if that individual while acting under color of state law causes the deprivation of a federal right. In this context, we find that plaintiff raised a genuine factual issue as to whether her supervisors caused her termination through their low evaluations and their apparent recommendation that she be fired. *Cf. Wulf v. City of Wichita*, 883 F.2d 842, 864 (10th Cir.1989). For example, we note that the hearing officer concluded in his analysis that "the higher authorities who directly took the actions appealed ... acted in reliance on Davis and his reports and evaluation...." *See* Doc. 36, Exhibit A, Analysis of Evidence at 5.

Davis are liable for arbitrarily depriving her of a property right in continued employment.[5]

The Due Process Clause of the Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property without due process of law...." U.S. Const.Amend. XIV. Although the phrase "due process" connotes a right to a fair hearing, the Supreme Court has recognized that the clause contains a substantive component as well. *See e.g., Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). If an individual's right to property is entitled to the protection of substantive due process, the state may not arbitrarily take that property from the owner. *Cf. Harrah Independent School District v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979).[6]

The appellees do not contest the assertion that plaintiff had a property right in continued employment with the Department of Youth Services. Plaintiff could not be terminated from her position as a Youth Services worker without cause. After she received substandard evaluations from Davis in 1979, and after being provided an opportunity to respond to the charges against her, plaintiff was notified that her employment was terminated. Under Colorado law, such a termination was subject to an appeal to the Colorado State Personnel Board. Plaintiff appealed her termination to the Personnel Board, which ordered the Department of Youth Services to reinstate the plaintiff with back pay and benefits and to expunge the substandard evaluations from her personnel file. Plaintiff was also awarded attorney's fees.

We find that under these facts the plaintiff cannot state a claim for deprivation of the right to substantive due process. The essence of the plaintiff's claim is that her supervisors caused the state to arbitrarily deprive her of the right to continued employment. Under the procedures established by the state to ensure that an employee is not terminated without cause, however, the plaintiff's property right in continued employment was reinstated through a post-termination hearing. All of the property rights that plaintiff asserted to have been wrongfully taken were restored by the decision of the State Personnel Board. In these circumstances, the plaintiff cannot now complain that the state has deprived her of property. *Cf. Hudson v. Palmer*, 468 U.S. 517, 539, 104 S.Ct. 3194, 3206, 82 L.Ed.2d 393 (1984)

---

Plaintiff did not argue in the district court that her termination in 1986 was a deprivation of the right to substantive due process caused by defendants Grant and Davis. We therefore do not address that issue.

5. Plaintiff does not argue that she was deprived of a liberty interest. Our discussion therefore pertains only to plaintiff's property interest in continued employment.

6. For purposes of this opinion, we assume, without holding, that the plaintiff's property interest is entitled to the protection of substantive due process. As we noted in *Jacobs, Visconsi & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1119 (10th Cir.1991), it is not clear what interest is required to trigger substantive due process guarantees. It appears that the Supreme Court has not expressly determined whether all property is entitled to such protection. In *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), a university student brought a substantive due process claim, alleging that he had a property interest in continued enrollment in an educational program and that the university had arbitrarily deprived him of that right. The majority in *Ewing* assumed for purposes of the opinion that such a property right was protected by substantive due process, but held that any such right was not violated because the university had not acted arbitrarily in dismissing the student from the program. In a concurrence, Justice Powell asserted that not all property rights are entitled to the protection of substantive due process. He contended that "[w]hile property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, ... substantive due process rights are created only by the Constitution." *Ewing*, 474 U.S. at 229, 106 S.Ct. at 515. Justice Powell would have held that the student's interest was not entitled to the protection of substantive due process, noting that as a state law contract right it bore "little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." *Id.* at 229–30, 106 S.Ct. at 516. *Cf. Harrah Independent School District v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (Reviewing non-renewal of a tenured teacher's contract under a substantive due process analysis).

(O'Connor, J., concurring) ("When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.") Appellant does not dispute the fact that she received constitutionally adequate procedural due process when she was terminated. The plaintiff was given notice and an explanation of the disciplinary charges against her. She was then was afforded a pre-termination hearing with her appointing authority at which she presented her side of the story. After the appointing authority decided nonetheless to terminate her, plaintiff followed the procedures set up by the state and was afforded an extensive post-termination hearing. The presiding hearing officer at the latter hearing found that plaintiff had been terminated without cause.

Appellant asserts two reasons why she should be allowed to pursue the claim for deprivation of substantive due process. First, she argues that the deprivation of such a right is complete at the time of the official's action and that the existence of a post-deprivation remedy is irrelevant. Second, appellant maintains that the remedy provided by the State Personnel Board was inadequate because the Board could not award her damages for emotional distress or punitive damages.

As appellant argues, courts have recognized that "if substantive constitutional rights are violated, the constitutionally recognized deprivation is complete at the time of the action, irrespective of the procedures available before or after the deprivation." *Kauth v. Hartford Insurance Company of Illinois*, 852 F.2d 951, 958 (7th Cir.1988). *See Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The rationale supporting this view is that procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision. *Williams–El v. Johnson*, 872 F.2d 224, 228 (8th Cir.1989). Based on this distinction, some courts have indicated that the fact that a fair state procedure exists in which the person could pursue a remedy for the deprivation does not preclude an action under § 1983 for violation of substantive due process. *See e.g., Williams, supra.* Conversely, at least one circuit has stated that the availability of an adequate state post-deprivation hearing may preclude an action for substantive due process in some circumstances. *See Kauth,* 852 F.2d at 958 ("Given the Supreme Court's recent decisions in *Parratt* and *Hudson,* however, we believe that in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim.")[7] We need not decide the difficult question of when, if ever, the existence of an adequate state procedure in which the plaintiff could seek a remedy for the deprivation of his or her property precludes a claim for substantive due process. *Cf. Zinermon v. Burch, supra.* We decide only that because a procedurally adequate post-termination hearing actually resulted in the plaintiff's reinstatement, together with back pay for the temporary deprivation of her employment, the plaintiff cannot now state a substantive due process claim under § 1983 predicated on the loss of employment.

It would be unrealistic in this case to treat procedural and substantive due process as completely separate matters. Although the two are not interchangeable, both serve as safeguards against abusive

---

**7.** The references in the quoted material are to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). These cases stand for the proposition that in certain circumstances a person deprived of the right to property by an act of a state official cannot state a § 1983 claim for violation of the right to procedural due process if the state makes available a constitutionally adequate post-deprivation remedy.

state action. Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Such was the case here. The plaintiff was provided with a pre-termination hearing. Although the plaintiff was erroneously terminated after this initial hearing, that decision was corrected at a post-termination hearing and the plaintiff was reinstated with back pay. Thus, the procedure required by the Due Process Clause served its purpose—it protected the plaintiff against arbitrary state action by restoring to her the property that was taken. Although ideally an unfounded disciplinary action would be detected at an initial pre-termination hearing, sometimes a mistaken decision will only become apparent through a more elaborate post-termination hearing. In *Loudermill,* the Supreme Court recognized that a pre-termination hearing is intended to serve as an initial and limited check against mistaken decisions. 470 U.S. at 545–46, 105 S.Ct. at 1495. It need not definitively resolve the propriety of the discharge. *Id.* Such a limited pre-termination hearing serves to balance the competing interests of the individual employee and the state as the employer. *Id.* at 542–43, 105 S.Ct. at 1493. *See also Arnett v. Kennedy,* 416 U.S. 134, 168–70, 94 S.Ct. 1633, 1651–52, 40 L.Ed.2d 15 (1974) (Powell, J., concurring). Although appellant contends that substantive rights and procedural rights must be viewed separately, we decline to adopt an impractical view of substantive due process that might undermine the balance outlined in *Loudermill* by effectively requiring a government employer to conduct a full evidentiary hearing before terminating an employee. *See Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 ("To require more than [notice and an opportunity to respond] prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.") *See also Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) ("At some point the benefit of an additional safeguard to the individual affected … and to society in terms of increased assurance that the action is just, may be outweighed by the cost.") In this case, we conclude that the procedure established by the state provided the plaintiff with both procedural and substantive due process.

Appellant recognizes that her property rights were restored but contends that the remedy provided by the Personnel Board was inadequate. She seeks punitive damages and damages for emotional distress, both of which she could not obtain from the Personnel Board. The fact that plaintiff could obtain more relief under § 1983 does not mean that the remedy for the temporary deprivation of her property was constitutionally inadequate. In *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), a plaintiff alleging a deprivation of property without due process argued that he should be allowed to sue under § 1983 rather than pursue a state tort remedy because the state did not allow all of the relief that was available under § 1983. The Supreme Court rejected this argument, stating:

> Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirement of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

*Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917. Although the *Parratt* case did not specifically address the issue of substantive due process, the Court's conclusion that the available remedy was adequate to satisfy the requirements of due process is significant. We believe that the same principle would apply here, where the plaintiff has been fully compensated for the property loss she suffered, notwithstanding the fact

**492**

that greater relief might be obtained under § 1983.

IV. *Conclusion.*

For the foregoing reasons, the judgment of the district court is AFFIRMED.