Joe Robert FERRARO, Plaintiff,

v.

BOARD OF TRUSTEES OF LA-BETTE COUNTY MEDICAL CENTER, et al., Defendants.

No. 98–1291–JTM.

United States District Court, D. Kansas.

July 18, 2000.

David R. Smith, Sanders, Simpson, Fletcher, & Smith, L.C., Kansas City, MO, for Joe Robert Ferraro.

Jeffry L. Jack, Markham & Jack, Chartered, Parsons, KS, Reid F. Holbrook, Lynaia M. Holsapple, Jeffrey A. Bullins, Holbrook, Heaven & Osborn, P.A., Kansas City, KS, Richard C. Dearth, Parsons, KS, for Board of Trustees of Labette County Medical Center.

Reid F. Holbrook, Jeffrey A. Bullins, Holbrook, Heaven & Osborn, P.A., Kansas City, KS, Richard C. Dearth, Parsons, KS, for Richard A Nye.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Currently pending before the court is the defendants' motion for summary judgment. The motion is fully briefed and ripe for the court's consideration. Having carefully considered the parties' submissions, the court finds that the defendants' motion should be granted for the reasons set forth below.

### I. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir.

1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the non-moving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'"* *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita* ). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. Facts

Defendant Board of Trustees of Labette County Medical Center (the "Board"), is the duly appointed, qualified and acting governing authority of Labette County Medical Center ("LCMC"). LCMC is a county hospital within the meaning of K.S.A. 19–4601 et seq. Defendant Richard Nye was the C.E.O. of LCMC from April 1995 until May 1997. Plaintiff, Joe Robert Ferraro, is a white male who is a licensed registered nurse and who is also a certified registered nurse anesthetist.

The Board possesses the authority and responsibility for the selection of professional staff members in accordance with the law. Plaintiff is a non-physician health professional whose privileges are granted for a period of two years. Through the medical staff credentialing process, he has enjoyed privileges to give anesthesia to patients during surgery and other medical procedures being performed by the physician members of the medical staff. Plaintiff has held these privileges for over 20 years. According to the defendants, non-physician health professionals practice at the discretion of the Board and privileges may be terminated at will.

On June 2, 1995, Leslie McConnell, R.N., reported that, while in the recovery room the previous day, she observed plaintiff place his right hand under an anesthetized patient's blanket in the genital area. Nurse McConnell reported this incident to Sherry Payne, R.N., the operating room director at LCMC. Nurse Payne reported the incident to W.L. Dillon, M.D., the Chief of Surgery.

On June 29, 1995, Kaylene McCullough, R.N., reported that, while in the recovery room, she saw plaintiff reach under the blanket of an anesthetized patient in the groin area, two or three separate times. Nurse McCullough reported this incident to Sherry Payne, who again reported the incident to Dr. Dillon.

Dr. Dillon reported each of these incidents to Richard Nye. On July 7, 1995, at Nye's direction, Dr. Dillon spoke with plaintiff concerning the reported events. Dr. Dillon told plaintiff that the hospital was aware of the allegations, and that such activity, if true, could not continue. Dr. Dillon also suggested that plaintiff avoid doing anything that would draw attention to himself in a way that could be construed as inappropriate behavior.

On August 13, 1996, Nurse McConnell reported that, while in the recovery room,

she observed plaintiff place his right hand under a patient's blanket in the groin area, and move it up and down underneath the blanket. Nurse McConnell reported this incident to Sherry Payne, and Payne reported the incident to Dr. Dillon.

On August 13, 1996, Susan Stover, R.N., reported that, while in the recovery room, she observed plaintiff place one hand under a patient's blanket in the groin area. Nurse Stover reported this incident to Sherry Payne, and Payne again reported the incident to Dr. Dillon.

Dr. Dillon reported each of these incidents to Nye. Dr. Dillon briefly interviewed Payne, McConnell and Stover, and McConnell and Stover, at some point, provided written statements. On August 16, 1996, Hospital Chief of Staff, Asha Verma, M.D., signed a letter addressed to plaintiff summarily suspending without pay his privileges to practice anesthesia at LCMC, based on representations by Nye that the Medical Staff Executive Committee had met and voted to summarily suspend plaintiff. The Medical Staff Executive Committee never met or discussed suspending plaintiff's privileges prior to their being suspended.

On August 29, 1996, the Medical Executive Committee requested plaintiff's presence at a meeting it held that day. The purpose of the meeting was twofold: (1) to informally discuss with plaintiff the allegations made against him; and (2) to review and consider the continuation of plaintiff's summary suspension. On September 10, 1996, the Medical Executive Committee held a meeting. During the meeting, the committee provided plaintiff excerpts of written statements that suggested inappropriate conduct. The committee did not provide plaintiff with the patients' records, dates of the alleged behavior, or names of the patients he was alleged to have behaved with inappropriately. Plaintiff stated that he was not guilty of the allegations and refused to answer any other questions without his attorney being present. As a result of the meeting, the committee unanimously recommended that the summary

suspension remain in effect, and that plaintiff obtain an evaluation through the impaired nursing program.

Section 10.3–3 of LCMC's Medical Staff Bylaws states that unless the Medical Executive Committee terminates a summary suspension within 30 calendar days of its imposition, "the member shall be entitled to the procedural rights afforded by Article XI and the Fair Hearing Plan." Med. Staff Bylaws, § 10.3–3. On October 8, 1996, plaintiff requested a Fair Hearing as provided by the Medical Staff Bylaws. The hearing was scheduled to occur on November 11, 1997, and to be conducted according to the terms of the Fair Hearing Plan provided in the Medical Staff Bylaws. At plaintiff's request, the committee granted a continuance. Plaintiff had requested that material be provided to him regarding the specifics of the allegations against him. He received the information just prior to the scheduled date of the hearing. Therefore, his attorneys did not have ample time to prepare a defense because the evidence was not provided to them until shortly before the scheduled hearing. The hearing began on November 22, 1996, and was later resumed on December 11 and 12, 1996. During the hearing, plaintiff was able to examine witnesses and present arguments.

On December 17, 1996, the hearing officer, Gary Lassman, issued his report, recommendations and findings from the hearing. Mr. Lassman concluded that plaintiff's suspension was not arbitrary, capricious or irrational. Nevertheless, he recommended that plaintiff's privileges be reinstated.

On December 18, 1996, the Medical Executive Committee, at a specifically convened meeting, reinstated plaintiff's privileges, following the recommendations of the hearing officer. Plaintiff returned to his practice on January 8, 1997.

While plaintiff was suspended, Dr. Dillon informed members of the medical staff of the reasons for his suspension. He told non-medical staff personnel of the reasons

for plaintiff's suspension if it was necessary for them to perform their duties at the hospital.

Plaintiff's sole source of income is through his work as a nurse anesthetist. His earnings from the years 1991 through 1998 are summarized as follows:

| | |
|---|---|
| 1991 | $104,277.07 |
| 1992 | $110,720.10 |
| 1993 | $119,286.13 |
| 1994 | $131,847.96 |
| 1995 | $130,109.42 |
| 1996 | $ 97,129.36 |
| 1997 | $136,308.00 |
| 1998 | $136,680.00 |

Plaintiff does not deny that his income has steadily increased since 1996. However, he claims that the number of procedures performed at LCMC has increased at a greater rate than his income. The defendants contend that the overall increase in procedures has been minimal, and that if there is found to be a lesser increase in plaintiff's income in relation to the alleged growth in surgical procedures, it is because of plaintiff's unwillingness to be available for services, his inability to conduct specific anesthetic procedures, and the refusal of certain physicians to utilize his services.

### III. Analysis

#### A. Property Interest in Employment.

 Plaintiff claims the defendants violated his rights to substantive and procedural due process with regard to his right to continued employment at LCMC.[1] The defendants argue plaintiff was an at-will independent contractor who earns his income by performing fee-for-service work; therefore, he did not possess a property interest in his employment at LCMC. Whether plaintiff possessed a property interest in his employment is a matter of state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Kansas has historical-ly followed the common law doctrine of employment at-will. *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 537 (10th Cir.1995). "Employees are considered to be at-will in the absence of an express or implied contract." *Id.* "The existence of an implied contract depends on the intent of the parties, divined from the totality of the circumstances." *Id.*

> "Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced."

*Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841, 848–49 (1987) (quoting *Allegri v. Providence–St. Margaret Health Ctr.,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984)). "[W]hether an implied contract exists which creates a property interest in employment normally is a question of fact for the jury." *Koopman v. Water Dist. No. 1,* 972 F.2d 1160, 1164 (10th Cir.1992).

The defendants claim plaintiff was an independent contractor who could be terminated at will. However, for all intents and purposes, the defendants treated plaintiff as an employee with an interest in continued employment. The evidence before the court indicates that plaintiff's privileges to practice anesthesia at LCMC could not be removed without following the procedures established in the Medical

---

1. The defendants argue that plaintiff's claims are based on the theory of respondeat superior, which has no application in causes of action arising under 42 U.S.C. § 1983. Plaintiff denies that his claims are based on respondeat superior liability. Instead, he asserts his claims are based on a policy, custom or ratification by the Board, the governing body of LCMC. The court will not address this issue, because it finds the defendants are not liable under any theory of liability as set forth below.

Staff Bylaws. If plaintiff was in fact an at-will independent contractor, the defendants could have summarily terminated his privileges and ended the parties' relationship. Instead, they granted him rights to a hearing, implying he could only be terminated for cause. Therefore, the court will assume, without deciding, that plaintiff had a property interest that could not be removed without adequate due process.

■■■ "Although the existence of a property interest is determined by state law, federal constitutional law determines what process is due before an employee may be deprived of that interest." *Harjo v. Varnum Pub. Schs.*, 1998 WL 817754, at *2 (10th Cir.1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). "Due process requires that plaintiff have had an opportunity to be heard at a meaningful time and in a meaningful manner before termination.... 'This requirement includes three elements: 1) an impartial tribunal; 2) notice of charges given a reasonable time before the hearing; and 3) a pretermination hearing except in emergency situations.'" *Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir.1993) (quoting *Patrick v. Miller*, 953 F.2d 1240, 1244 (10th Cir.1992)); *see also Harjo*, 1998 WL 817754, at *2 ("Federal constitutional law requires only notice and a fair and impartial adversarial hearing before an employee may be permanently deprived of his property interest in employment.").

■ " '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (quotation omitted). Rather, it " 'is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quotation omitted). The Supreme Court has recognized, "on many occasions," "that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the require-

ments of the Due Process Clause." *Id.* (citing numerous cases).

Plaintiff claims he was denied procedural due process when his privileges were suspended. Specifically, he claims the defendants should have given him a predeprivation hearing. The defendants contend that the medical staff leadership believed it was necessary for plaintiff to be suspended as soon as reasonably possible because LCMC's primary interest is the protection and safety of its patients. According to the defendants, the allegations made against plaintiff were of such a nature that the protection and safety of LCMC's patients was at risk. The defendants further argue that plaintiff was provided adequate due process. His privileges were reinstated pursuant to the hearing afforded him under the Medical Staff Bylaws. As such, plaintiff was made whole and has suffered no harm as a result of his suspension.

■ In analyzing plaintiff's due process claim, the court must bear in mind the Tenth Circuit's opinions in *Workman v. Jordan*, 32 F.3d 475 (10th Cir.1994) and *Archuleta v. Colorado Dep't of Institutions*, 936 F.2d 483 (10th Cir.1991). In those cases, the court refused to review the adequacy of the challenged procedures, finding that the plaintiffs had suffered no deprivation of a property interest. *See Workman*, 32 F.3d at 479; *Archuleta*, 936 F.2d at 489–90. That finding of no deprivation was founded on postdeprivation proceedings that restored the plaintiffs' property rights in their employment. Likewise, in this case, the court will not review the adequacy of the postdeprivation hearing provided to plaintiff because that process restored plaintiff's privileges. *See Workman*, 32 F.3d at 480 ("[W]e find it difficult to evaluate any grievance procedure as inadequate when the employee was reinstated and given full back pay."). "Thus, the procedure required by the Due Process Clause served its purpose—it protected the plaintiff against arbitrary state action by restoring to [him] the property

that was taken." *Archuleta,* 936 F.2d at 491.

█ Plaintiff contends that he should have been provided a predeprivation hearing, but as previously mentioned, the Supreme Court has found that when it is necessary to act quickly, postdeprivation satisfies the requirements of the Due Process Clause. *Gilbert,* 520 U.S. at 930, 117 S.Ct. 1807. The court finds that such a situation presented itself in this case. Serious allegations had been made against plaintiff regarding the patients' safety. LCMC had a duty to its patients to end the alleged behavior as quickly as possible.

█ Plaintiff also claims damages resulting from emotional distress and the costs of his defense. However, "[t]hese incidental losses do not give rise to an independent protected property interest. [The court's] authority to award these damages to a successful § 1983 plaintiff is of no matter." *Workman,* 32 F.3d at 480 n. 4.

█ Substantive due process requires that the defendants' suspension of plaintiff's privileges[2] not be " 'arbitrary, capricious, or without a rational basis.' " *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 528 (10th Cir.1998) (quoting *Brenna v. Southern Colo. State College,* 589 F.2d 475, 477 (10th Cir.1978)). The Tenth Circuit recently reiterated the standards for evaluating substantive due process claims:

> In *Uhlrig v. Harder,* 64 F.3d 567 (10th Cir.1995), we stated that "the standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.' " *Id.* at 573 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)) (further quotations omitted). To "satisfy the 'shock the conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to

the plaintiff by abusing or misusing government power." *Id.* at 574. Rather, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

*Babbar v. Ebadi,* 2000 WL 702428, at *10 (10th Cir.2000).

█ However unfortunate the defendants' decision may have been, plaintiff has not presented evidence sufficient to raise a genuine issue of material fact as to whether the defendants' actions were shocking to the conscience to an extent meriting judicial override of the defendants' decision to suspend plaintiff's privileges. *Id.* The defendants were faced with a serious situation. A member of their staff had been accused, on more than one occasion, of fondling patients while they were recovering from the effects of anesthesia. The defendants would have faced a great liability had they not taken action to prevent this type of behavior.

In summary, the court concludes that the procedure utilized by the defendants in reinstating plaintiff's privileges provided plaintiff with both procedural and substantive due process. Therefore, the defendants' motion for summary judgment with respect to these claims is granted.

### B. Liberty Interest in Name and Reputation.

█ The court next addresses plaintiff's contention that Dr. Dillon's alleged statements affected his liberty interest in his good name and reputation. To support a claim for a deprivation of a liberty interest in one's reputation, damage to one's reputation alone is insufficient to invoke the protections of the Due Process Clause. *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Rather, loss of reputation must be coupled with some other tangible element, such as employment, in order to rise to the level of a

---

2. In analyzing plaintiff's substantive due process claim, the court assumes plaintiff's em-

ployment was an interest entitled to protection.

protected liberty interest. *Id.* at 712, 96 S.Ct. 1155.

 For the purpose of evaluating plaintiff's argument, the court assumes he possessed a liberty interest in his continued employment at LCMC. However, to succeed on his claim, he must show how Dr. Dillon infringed that interest. *Lighton v. University of Utah,* 209 F.3d 1213, 1223 (10th Cir.2000) (citing *Workman,* 32 F.3d at 481). First, plaintiff must show Dr. Dillon's statements impugned his "good name, reputation, honor or integrity." *Workman,* 32 F.3d at 481. Second, Dr. Dillon's statements must have been false. *Id.* Third, Dr. Dillon's statements must have been made in the course of suspending plaintiff's privileges or must have foreclosed other employment opportunities. *Id.* And, finally, his statements must have been published. *Id.* "[T]hese four elements are not disjunctive—*i.e.,* all four elements must be satisfied to demonstrate deprivation of [plaintiff's] liberty interest." *Lighton,* 209 F.3d at 1223.

Plaintiff claims Dr. Dillon told medical and non-medical staff of the reasons for plaintiff's suspension, not simply that he was suspended. He further argues that rumors circulated around the small town of Parsons regarding his suspension—rumors that necessarily started at LCMC.

 Plaintiff's claims regarding his liberty interest in his name and reputation fail as a matter of law. He has not set forth any specific statements made by Dr. Dillon concerning his suspension, much less show that those statements impugned his good name, reputation, honor or integrity. Plaintiff admits the evidence he offers is general, but he believes he can produce specific evidence at trial. However, plaintiff is obliged to produce those statements in response to defendant's summary judgment motion to establish the existence of a genuine issue of material fact. His failure to support his claim at this time is fatal to this claim.

Even if Dr. Dillon told LCMC personnel the reasons for plaintiff's suspension, plaintiff has failed to show that those statements were false. In addition, plaintiff has not shown that the alleged statements foreclosed other employment opportunities. Plaintiff admitted that he never attempted to apply for other professional opportunities as a nurse anesthetist during his suspension. Therefore, he cannot show that he has been foreclosed other professional opportunities, because he never attempted to obtain those opportunities. Furthermore, plaintiff's alleged loss of future employment is "too speculative and intangible to constitute a deprivation of a liberty interest." *Id.* at 1224. Finally, because plaintiff has not produced the actual statements made by Dr. Dillon, or anyone else, he has failed to establish the publication element of his claim.

In summary, the court finds that plaintiff's claims relating to his liberty interest in his reputation and name should be dismissed because he is unable to show that the defendants infringed that interest.