**Michael KATZ, Plaintiff,**

**v.**

**CITY OF AURORA and Verne R. Saint Vincent, Defendants.**

**No. CIV.A. 99–S–1047.**

United States District Court, D. Colorado.

Feb. 18, 2000.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Recommendation of United States Magistrate Judge Coan that Defendants' Motion to Dismiss (filed August 31, 1999) be granted and that all of Plaintiff's claims be dismissed. The Recommendation was filed on January 20, 2000 and served on the parties by mail on January 20, 2000. On January 31, 2000, Plaintiff filed his "Objection to Magistrate Judge's Recommendation Regarding Motion to Dismiss." Defendants have not filed any objections to the Recommendation. The court must make a *de novo* determination of those portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b). The court has reviewed *de novo* the Complaint (filed June 4, 1999), Defendants' Motion, Plaintiff's Response (filed September 23, 1999), Defendants' Reply (filed October 22, 1999), the Recommendation, Plaintiff's Objections, the entire case file, the exhibits and affidavits, and the applicable law and is sufficiently advised in the premises.

## I. Standard of Review

If, on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed.R.Civ.P. 12(b); *see also Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) (citing *Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986)). Because both parties submitted and she considered materials outside the pleadings, Magistrate Judge Coan treated and this court will treat Defendants' motion as one for summary judgment under Fed.R.Civ.P. 56.

Richard Stephen Shaffer, Law Office of Richard S. Shaffer, PC, Aurora, CO, for plaintiff.

Peter Ruben Morales, Charles H. Richardson, Office of the Aurora City Attorney, Aurora, CO, Timothy P. Schimberg, Fowler, Schimberg & Flanagan, PC, Denver, CO, for defendants.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okl.,* 942 F.2d 737, 743 (10th Cir.1991). A "material" fact is one that might affect the outcome of the suit under the governing law. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *John Hancock Mut. Life Ins. Co. v. Weisman,* 27 F.3d 500, 503 (10th Cir.1994); *Universal Money Centers, Inc. v. American Tel. & Tel. Co.,* 22 F.3d 1527, 1529 (10th Cir.), *cert. denied,* 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). If the moving party meets this burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In applying the summary judgment standard, the court construes the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Blue Circle Cement, Inc. v. Board of County Com'rs. of County of Rogers,* 27 F.3d 1499, 1503 (10th Cir.1994); *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). However, the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *FDIC v. Hulsey,* 22 F.3d 1472, 1481 (10th Cir.1994) (emphasis in original). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

## II. Analysis

Plaintiff asserts three claims for relief in his Complaint: (1) disparate treatment on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("the ADEA"); (2) violation of 42 U.S.C. § 1983 for maintaining a sexual harassment policy that unconstitutionally denied Plaintiff due process and equal protection; and (3) a state law tort claim for intentional infliction of emotional distress. Magistrate Judge Coan recommends dismissal of all three of Plaintiff's claims.

A. First, Magistrate Judge Coan recommended that summary judgment be granted on Plaintiff's First Claim for Relief under the ADEA because Plaintiff's EEOC charge of discrimination was untimely.

A plaintiff must exhaust certain administrative remedies in order to file an ADEA claim in federal court. 29 U.S.C. § 626(d). As a prerequisite to commencing this civil action for age discrimination, Plaintiff was required to file his ADEA claim with the Equal Employment Opportunity Commission or the Colorado Civil Rights Division

within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(2).

■ A cause of action accrues under the ADEA "on the date the employee is notified of an adverse employment decision." *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir.1988) (citation omitted). "Generally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer." *Gray,* 858 F.2d at 614. Magistrate Judge Coan found that, for purposes of filing a timely EEOC charge, Plaintiff knew of the challenged adverse employment decision (his demotion) no later than June 4, 1996. In order for Plaintiff's EEOC charge to have been timely, it must have been filed no later than March 31, 1997. Plaintiff filed his EEOC charge on April 1, 1997.

Plaintiff objects to the Magistrate Judge's reliance on a letter written by Plaintiff as evidence of the date Plaintiff knew of the demotion. (Exhibit 1 to Plaintiff's Objection p. 1). Plaintiff asserts that other more reliable evidence in the record demonstrates that Plaintiff did not know of his demotion until June 6, 1996. (Exhibit 2 to Plaintiff's Objection pp. 33–34). Plaintiff also asserts that he "erred" in Exhibit 1 "as to the date he learned the final decision." (Plaintiff's Objection p. 2).

The court may properly disregard paragraph 1 of Plaintiff's September 22, 1999 affidavit because it is so plainly inconsistent with Plaintiff's own prior statements. To allow Plaintiff "to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56." *Sinskey v. Pharmacia Ophthalmics, Inc.,* 982 F.2d 494, 498 (Fed.Cir. 1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 256 (1993). Parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. *See Fast v. Southern Union Co., Inc.,* 149 F.3d 885, 892 n. 7 (8th Cir.1998) ("only in circumstances ... where the conflicts between the deposition and affidavit raise ... sham issues should summary judgment be granted"); *Sinskey,* 982 F.2d at 498 ("party cannot create an issue of fact by supplying an affidavit contradicting his prior deposition testimony, without explaining the contradiction or attempting to resolve the disparity"). *But see Leslie v. Grupo ICA,* 198 F.3d 1152, 1999 WL 1093118 (9th Cir.1999) ("a sworn affidavit is not a 'sham' merely because it contradicts unsworn letters").

Plaintiff's affidavit and later contention that he "erred" in his letter (Exhibit 1 to Plaintiff's Objection) do not explain or clarify his prior inconsistent statement. Rather, Plaintiff's affidavit flatly contradicts his earlier statement in an attempt to create an issue of fact and avoid summary judgment.

Plaintiff's statement in paragraph 1 of his affidavit is internally inconsistent as well, inasmuch as he states that he wrote his letter of resignation on June 6, 1996, but he was not provided the final decision regarding his demotion until "June 6, 1996, *or June 7, 1996.*" (Katz Affidavit, Exhibit 4 to Plaintiff's Response to Defendant's Motion to Dismiss ¶ 1) (emphasis added). Plaintiff could not have written his June 6, 1996 letter if he did not know of the final decision until June 7, 1996.

■ The court finds that the evidence supports Magistrate Judge Coan's finding that Plaintiff knew of his demotion no later than June 4, 1996. *See* Exhibit 1 to Plaintiff's Objection p. 1; Exhibit 2 to Plaintiff's Objection pp. 32–33; Complaint ¶ 24. Because the evidence supports the finding that Plaintiff knew of his demotion no later than June 4, 1996, Plaintiff's EEOC charge filed April 1, 1997 was untimely. Therefore, Defendants are entitled to summary judgment on Plaintiff's First Claim for Relief.

B. Next, Magistrate Judge Coan recommended that summary judgment be granted on Plaintiff's Second Claim for Relief for violation of 42 U.S.C. § 1983. Plaintiff objects to Magistrate Judge

Coan's determination that the City of Aurora's Policy regarding sexual harassment (Exhibit 5 to Plaintiff's Objection) did not violate Plaintiff's substantive due process rights or deny Plaintiff equal protection of the law.[1] Plaintiff asserts that the City's sexual harassment policy violates his substantive due process and equal protection rights by including unintentional as well as intentional conduct. (Plaintiff's Objection pp. 4–5).

### 1. Municipal Liability under § 1983

■ The Supreme Court held in *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 689–90, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that municipalities and other local governmental bodies are "persons" within the meaning of 42 U.S.C. § 1983. "[I]n Monell and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citations omitted). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bryan County*, 520 U.S. at 403–04, 117 S.Ct. 1382 (citation omitted).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382. To warrant liability, the alleged policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the public entity's officers. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996) (internal quotation marks and citation omitted).

### 2. The City's Sexual Harassment Policy

The City's policy regarding sexual harassment states:

> The City of Aurora shall not tolerate incidents or circumstances of discrimination, harassment nor [sic] sexual harassment. The definition for discrimination, harassment and sexual harassment are as follows:

> Discrimination concerns the unfair or unequal treatment of a person or group (either intentional or unintentional) based on race, color, age, national origin, religion, sex, disability, or veteran's status.

> Harassment is conduct which is intended to harass, annoy or alarm another person (see City Code Chapter 27, Article V, Sec. 27.70).

> Sexual Harassment is unwelcomed sexual advances, requests for sexual favors and/or other verbal or physical conduct directed at an individual because of that individual's gender when:

> (a) Submission to such conduct is either explicitly or implicitly a term or condition of employment, or

> (b) Submission or rejection of such conduct by an individual is used as the basis of employment decisions affecting such individual, or

> (c) Such conduct has the purpose or effect of unreasonably interfering with any individual's work performance or creating an intimidating,

---

**1.** Plaintiff clarified at the January 3, 2000 hearing on the motion that he does not allege any violation of procedural due process or any § 1983 claim against Defendant St. Vincent in his individual capacity. (Recommendation p. 7 n. 5; p. 8 n. 6).

hostile or offensive work environment.

(Exhibit 5 to Plaintiff's Objection).

As a result of an internal investigation, Plaintiff was found to have "pulled on the bottom of secretary Claudia Winger's sweater brushing [his] fingers against her buttocks" and to have touched Detective Burggraff on her buttocks on two occasions. (Exhibit 2 pp. 5–6 to Plaintiff's Objection). Plaintiff has admitted that, if Winger or Burggraff felt that he touched them inappropriately, then he created a hostile atmosphere. (Exhibit 2 pp. 17, 19 to Plaintiff's Objection).

### 3. Substantive Due Process

Plaintiff alleges that the City's sexual harassment policy violates his substantive due process rights because it includes unintentional conduct.

■■■ The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law ...." U.S. Const. amend. XIV, § 1. "Although the phrase 'due process' connotes a right to a fair hearing, the Supreme Court has recognized that the clause contain a substantive component as well." *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services,* 936 F.2d 483, 489 (10th Cir.1991).

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

*Archuleta,* 936 F.2d at 490. "Substantive due process claims are not based on state law but are founded upon 'deeply rooted notions of fundamental personal interests derived from the Constitution.'" *Hennigh,* 155 F.3d at 1256 (citation omitted). Substantive due process requires only that termination of a protected interest not be arbitrary, capricious, or without a rational basis. *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1257 (10th Cir.1998) (citation omitted).

■■■ The City's sexual harassment policy is not unconstitutional for including unintentional as well as intentional conduct. Hostile work environment is recognized as a category of sexual harassment claims under Title VII. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir. 1987). A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1126 (10th Cir. 1993) (internal quotation marks and citation omitted). To be actionable under Title VII, harassment must affect "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). Hostile work environment harassment occurs where sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. *Sauers,* 1 F.3d at 1126 (internal quotation marks and citation omitted).

Plaintiff has cited no relevant authority for his allegation that the City's sexual harassment policy violates substantive due process for including unintentional harassing conduct. The inclusion of unintentional conduct in the City's sexual harassment policy is not arbitrary, capricious, or without a rational basis.

In addition, because it is not clear what interest is required to trigger substantive due process guarantees, "it is far from certain that Plaintiff's status" in his rank "would be a fundamental property right protected by the substantive due process doctrine." *Hennigh,* 155 F.3d at 1257. Even assuming "that Plaintiff did have a fundamental property interest in his rank which was subject to substantive due process protection," the court concludes that Defendant's decision to demote Plaintiff "was not arbitrary or without a rational

basis." *Hennigh,* 155 F.3d at 1257. As in *Hennigh,* Defendants here "acted to address" a violation of the City's sexual harassment policy and "their potential liability under federal statutes prohibiting the type of conduct committed by Plaintiff." 155 F.3d at 1257. The City's decision to demote Plaintiff was not arbitrary, capricious or irrational. Therefore, Defendants are entitled to summary judgment on Plaintiff's substantive due process claim.

#### 4. Equal Protection

Plaintiff alleges that the City's sexual harassment policy also violates his right to equal protection of the law because it includes unintentional conduct. (Plaintiff's Objection pp. 4–5).

■ The Equal Protection clause provides that no state may "deny to any person within its jurisdiction the equal protection of the Laws." U.S. Const. amend. XIV. The Equal Protection clause is triggered only when the government treats someone differently than another who is similarly situated. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

■ Plaintiff alleges that the City's sexual harassment policy violates equal protection because it constitutes a lower standard for a finding of sexual harassment than the law allows. (Plaintiff's Objection pp. 4–5). Plaintiff does not allege or present any evidence that he is a member of a suspect class or that he was treated differently than anyone else accused of committing sexual harassment. Neither Plaintiff's allegations nor the evidence show how Plaintiff was treated differently from others similarly situated. "The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection claim." *Hennigh,* 155 F.3d at 1257. Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

C. Finally, Magistrate Judge Coan recommended that summary judgment be granted on Plaintiff's Third Claim for Relief for intentional infliction of emotional distress. Plaintiff objects to Magistrate Judge Coan's determination that Plaintiff's Third Claim for Relief for intentional infliction of emotional distress against Defendant St. Vincent not only did not state a claim upon which relief can be granted, but was also barred by the Colorado Governmental Immunity Act ("CGIA"), Colo.Rev. Stat. § 24–10–118(2)(a) (1999).

■ 1. Intentional infliction of emotional distress requires conduct that is so outrageous and extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. CJI–Civ.3d 23:2 (1998); *Corcoran v. Sanner,* 854 P.2d 1376, 1380 (Colo.App.1993) (citation omitted); *Montgomery Ward & Co., Inc. v. Andrews,* 736 P.2d 40, 46 (Colo.App.1987); *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970). Intentional infliction of emotional distress may exist where the actor desires to inflict severe emotional distress or knows that such distress is certain or substantially certain, and the totality of the circumstances determines whether such conduct has occurred. *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292, 294 (Colo.App.1982). The tort of intentional infliction of emotional distress "contemplates an extreme level of independently ascertainable misconduct from which the 'ineluctable conclusion' is the calculated or reckless infliction of severe mental suffering." *Visor v. Sprint/United Management Co.,* 965 F.Supp. 31, 33 (D.Colo.1997) (quoting *Gard v. Teletronics Pacing Sys., Inc.,* 859 F.Supp. 1349, 1354 (D.Colo.1994)). Although the question whether conduct is sufficiently outrageous is ordinarily a question for the jury, the trial court must first determine whether reasonable persons could differ on the outrageousness issue. *See Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978).

The tort of intentional infliction of emotional distress is extremely limited. A mere allegation by an employee that he was dismissed or demoted wrongfully, summarily, or in violation of the employer's policies and procedures fails to state a claim for intentional infliction of emotional distress. *Bellairs v. Coors Brewing Co.*, 907 F.Supp. 1448, 1459 (D.Colo.1995), *aff'd*, 107 F.3d 880 (10th Cir. 1997). Discharge from employment, without more, is not intentional infliction of emotional distress. *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 384 (10th Cir.1988), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989); *Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1524–25 (1987). Discharge and alleged defamatory remarks do not support a claim of intentional infliction of emotional distress. *Steinberg v. Thomas*, 659 F.Supp. 789, 795 (D.Colo.1987). An allegation of age discrimination does not state a claim for intentional infliction of emotional distress. *Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. 240, 244 (D.Colo.1986). Allegations by an employee of thirty-three years that his employer had willfully, wantonly, and maliciously fired him did not rise to the required threshold of outrageousness. *Rawson v. Sears, Roebuck & Co.*, 530 F.Supp. 776, 780–81 (D.Colo.1982). An employer's failure to follow its own personnel policies does not amount to intentional infliction of emotional distress. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350–51 (Colo.1988) (*en banc*).

At most, Plaintiff conclusorily alleges by incorporated previous paragraphs of the Complaint that Defendant St. Vincent's conduct was outrageous. (Complaint ¶¶ 43–52). Significantly, the Complaint contains no separate factual allegations for the outrageous conduct claims which differ from the factual allegations supporting Plaintiff's First and Second Claims for Relief for violation of the ADEA and § 1983. "Where the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)." *Visor*, 965 F.Supp. at 33.

Plaintiff's allegations are merely conclusory and do not adequately state a claim for intentional infliction of emotional distress. While Plaintiff alleges that he was "railroaded ... out of the police department" by Defendant St. Vincent (Plaintiff's Objection p. 5), Plaintiff does not allege or support with evidence any facts showing that he was "railroaded." Plaintiff voluntarily retired rather than accept a demotion. In sum, Defendant St. Vincent's alleged conduct cannot sustain a finding of outrageous conduct under Colorado law. The court agrees with the Recommendation of Magistrate Judge Coan that Plaintiff's Third Claim for Relief be dismissed because the allegations cannot sustain a claim for intentional infliction of emotional distress under Colorado law.

2. The CGIA provides:

A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton; except that no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24–10–106(1).

Section 24–10–118(2)(a). Plaintiff asserts generally that Defendant St. Vincent's conduct was "outrageous." (Plaintiff's Objection pp. 6–7). To defend his claim for intentional infliction against Defendant's assertion of immunity, Plaintiff refers the court to paragraphs 12–24, 28–31, and 36–39 of his Complaint. None of those para-

graphs contain allegations that Defendant St. Vincent acted willfully and wantonly. While Plaintiff did conclusorily allege that Defendant St. Vincent's conduct was willful and wanton (Complaint ¶ 52), mere allegations that conduct is willful and wanton are insufficient. *Zerr v. Johnson*, 894 F.Supp. 372, 375–76 (D.Colo.1995). The court agrees with the Recommendation that Plaintiff's Third Claim for Relief be dismissed because Defendant St. Vincent is immune from suit.

### D. Application of City's Sexual Harassment Policy to Plaintiff's Conduct

Although his argument appears to go outside the parameters of Magistrate Judge Coan's Recommendation, Plaintiff next argues in his Objection that the City's sexual harassment policy was inapplicable to his conduct. (Plaintiff's Objection pp. 7–8). First, the court is not authorized under any of Plaintiff's claims to second-guess or reverse Defendants' determination that Plaintiff violated Defendants' sexual harassment policy. Second, the evidence supports Defendants' determination that Plaintiff violated the City's sexual harassment policy. Third, while Plaintiff argues that he should not have been found guilty of a violation of the sexual harassment policy, he has admitted that, if Winger or Burggraff felt that he touched them inappropriately, then he created a hostile atmosphere. (Exhibit 2 pp. 17, 19 to Plaintiff's Objection).

### III. Conclusion

In making her Recommendation on Defendants' Motion to Dismiss, treated as a motion for summary judgment, Magistrate Judge Coan performed a meticulous examination and analysis of Plaintiff's claims, the evidence, and the law. The court agrees with the Recommendation in its entirety.

Accordingly, IT IS ORDERED:

1. The Recommendation of United States Magistrate Judge is ACCEPTED.

2. Defendants' Motion to Dismiss, treated as a motion for summary judgment under Fed.R.Civ.P. 56, is GRANTED. Summary judgment shall enter in favor of Defendants and against Plaintiff on Plaintiff's Complaint.

3. Because Defendants have entirely prevailed in this matter, upon the filing of a bill of costs with the Clerk of the Court, Defendants shall be entitled to their costs pursuant to law.

4. The Trial Preparation Conference scheduled Thursday February 8, 2001 and the jury trial scheduled Monday February 12, 2001 are hereby VACATED.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

In this employment case, the matter before the court is Defendants City of Aurora ("City") and St. Vincent's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(1)[sic] [filed August 31, 1999]. A supplemental order of reference under 28 U.S.C. § 636(b)(1)(A) and (B) referred the motion to the undersigned magistrate judge on September 8, 1999 to issue a recommendation on disposition. The motion is fully briefed. The court heard oral argument on January 3, 2000.

### I. Background

Plaintiff's complaint, filed June 4, 1999, alleges that he was employed by the City of Aurora Police Department on April 3, 1972. Complaint, ¶ 7. Plaintiff states that he was a detective or agent as of the date he submitted his resignation, which he contends was a constructive discharge, effective June 24, 1996. *Id.*, ¶¶ 3,7. Plaintiff alleges that the City's policy, custom or practice was applied against him in a way that violated his rights under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq., and violated his constitutional rights to due process and equal protection of the laws.

*See id.,* ¶¶ 29, 30, 36–40. Plaintiff claims that Defendant St. Vincent ("St. Vincent" or "Chief"), the Aurora Chief of Police, intentionally caused plaintiff emotional distress. *Id.,* ¶¶ 44–49. Katz seeks declaratory and injunctive relief, "make whole relief", attorney and expert fees and costs, and punitive damages against defendant St. Vincent.

Plaintiff was advised of the results of an internal affairs investigation charging him with violation of the City's sexual harassment policy, unprofessional conduct, and making a false or untruthful declaration. Defs. Motion, Ex. A, at 2–3. Specifically, Katz was charged with brushing his fingers against the buttocks of secretary Claudia Winger and touching Detective Burggraff on the buttocks on two occasions. *Id.,* at 5–6. Katz participated in a predisciplinary hearing on June 3, 1996, *id.,* Ex. A, at 1–35. On that date, St. Vincent told plaintiff that he was seriously considering demoting him to police officer, and gave Katz three days to submit other materials for St. Vincent's consideration prior to the final discipline decision. *Id.,* at 33. On June 4, 1996, Katz was told that he was going to be demoted to the rank of police officer. Pl. Resp., Ex. 8, at 1. Katz chose to retire on June 6, 1996. Pl. Resp., Ex. 4 ¶ 1.

Plaintiff claimed at oral argument that the City's sexual harassment policy is unconstitutional on its face because it does not require a finding of intent. Katz also contended at oral argument that the city's sexual harassment policy, as applied to him, deprived him of due process because St. Vincent did not inquire as to plaintiff's intent with respect to the actions complained of during the predisciplinary hearing. Katz argues further due process deprivations because St. Vincent privately met with the women in the department, and because St. Vincent "railroaded" plaintiff through the internal affairs investigation. Plaintiff also asserts a state tort claim of intentional infliction of emotional

distress against St. Vincent only. Complaint, ¶¶ 44–49.

## II. Standard of Review

 Defendants move to dismiss all of plaintiff's claims for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), or, alternatively, for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The party bringing an action in federal court bears the burden of showing that the case fails within the court's subject matter jurisdiction and that the court has personal jurisdiction over the parties. *Henry v. Office of Thrift Supervision,* 43 F.3d 507, 512 (10th Cir.1994). Where the defendants' challenge to the court's subject matter jurisdiction is lodged as a facial attack on the complaint, the court must accept the allegations of the complaint as true. *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir.1995).

On a motion to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, the court must accept as true well-pleaded factual allegations. *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). All reasonable inferences must be resolved in plaintiff's favor. *Bauchman v. West High School,* 132 F.3d 542, 550 (10th Cir.1997)(internal citations omitted). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see, also, Ramirez v. Oklahoma Dep't of Mental Health,* 41 F.3d 584, 586 (10th Cir.1994); *Miller,* 948 F.2d at 1565.

The court converts defendants' motion to dismiss plaintiff's claims under Fed. R.Civ.P. 12(b)(6) to one for summary judgment under Rule 56 because defendants have submitted evidentiary materials in support of their motion. *Lowe v. Town of Fairland, Oklahoma,* 143 F.3d 1378, 1381 (10th Cir.1998). Plaintiff also has submitted materials outside the pleadings; he has attached to his response the transcript of the predisciplinary hearing, his affidavit,

and other materials in support of his opposition to the motion to dismiss. "[W]hen a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.1987); *see also Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986) ("Where a party has responded in kind to the movant's attempt to convert the motion [to dismiss to a motion for summary judgment], that party cannot later claim unfair surprise.").

The purpose of summary judgment is to determine whether trial is necessary. *White v. York International Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to [the nonmovant's claim]." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993)(internal citations omitted). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Conclusory allegations will not create a genuine issue of material fact necessitating trial. *White,* 45 F.3d at 363 II.

### III. Analysis

#### A. Timeliness of ADEA Complaint

A plaintiff claiming age discrimination in Colorado, a deferral state, has 300 days to file his charge of discrimination with the Equal Employment Opportunity Commission or the Colorado Civil Rights Division, which charge is a prerequisite for a suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(d)(2); *Aronson v. Gressly,* 961 F.2d 907, 911 (10th Cir.1992). A cause of action under the ADEA accrues on the date the employee is notified of an adverse employment decision. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 558–59 (10th Cir.1994) (internal citations omitted); *Hamilton v. 1st Source Bank,* 928 F.2d 86, 89 (4th Cir.1990).

Defendant moves for dismissal of plaintiff's age discrimination claims under Rule 12(b)(1), arguing that plaintiff was notified that he was going to be demoted on June 3, 1996, and that, therefore, plaintiff's EEOC charge, filed 303 days later on April 1, 1997, is untimely.

Plaintiff responds that he met with St. Vincent on June 3, 1996 which, he argues, was not the final hearing on the matter. Pl. Resp. at 2, Ex. 4, Katz Affidavit, ¶ 1. In his response to defendant's dispositive motion, plaintiff alleges for the first time that he met a second time with the Chief on either June 6 or June 7, 1996. Pl. Resp. at 3; Katz Affidavit, ¶ 1. In rebuttal, St. Vincent avers that there was a meeting on June 3, 1996 but that there was not a second meeting. Def. Reply, Ex. C, ¶ 2. St. Vincent also avers that it is his practice to tape record such meetings, which tapes are then retained in the City's Internal Affairs Unit files, and that there is no tape of a second meeting. *Id.,* ¶ 3.

Katz contends that his affidavit statement raises a genuine issue of material fact about the date he was advised of the demotion. The court finds that Katz' affidavit statements in response to defendants' motion to dismiss contradict his statement in his November 1996 letter to the Aurora City attorney in which he admits that St. Vincent advised him on June 4, 1996 that he would be demoted. *Compare* Pl. Resp., Ex. 4, Katz affidavit ¶ 1 with Defs. Motion, Ex. B at 1. The court finds *Sinskey v. Pharmacia Ophthalmics, Inc.,* 982 F.2d 494 (Fed.Cir.1992) persuasive on this point. There, the court reasoned that "[a] party cannot create an issue of fact by supplying an affidavit contradicting his prior deposition testimony, without explaining the contradiction or attempting to resolve the disparity...To allow him to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56." *Sinskey,* 982 F.2d at 498.[1] Here, Katz not only contradicts his earlier statement to the city attorney, but makes no effort to explain the contradiction. He should not be permitted to avoid summary judgment by attempting to create a factual dispute that is contrary to earlier contemporary documents.

In his complaint, plaintiff stated that he was notified that St. Vincent demoted him during a meeting between plaintiff and the Chief. Complaint, ¶ 24[2]. There is no record of any other meeting except the pre-disciplinary meeting which occurred on June 3, 1996. *See* Transcript of June 3, 1996 meeting: Def. Motion, Ex. A. at 1, Pl. Resp., Ex. 2 at 1(same document). At minimum, the record reflects that plaintiff was told at the June 3, 1996 meeting that the Chief of Police was "seriously considering" demoting Katz. Def. Motion, Ex. A, at 33. The record further reflects that, as of June 4, 1996, Katz believed he was going to be demoted, which is what he wrote to the City Attorney's Office in his notice under the Governmental Immunity Act. Def. Motion, Ex. B, at 1.[3] Katz then submitted his resignation letter on June 6, 1996, after deciding to retire rather than be demoted. Pl. Resp., Ex. 5. His charge was filed with the EEOC either April 1, 1997 or April 4, 1997. *See id.,* Exs. 6, 7.

The court finds that, as expressed in the 1996 documents he authored, plaintiff knew he was going to be demoted on June 4, 1996 at the latest. Since notice of the adverse action triggers the 300 day filing period, plaintiff was required to file his EEOC charge within 300 days of June 4, 1996, or by March 31, 1997. Plaintiff's earlier charge, filed one day later on April 1, 1997 *(id.,* Ex. 6), is untimely. Accordingly, under *Aronson,* plaintiff's ADEA

1. Similarly, in an unpublished Eighth Circuit decision, a plaintiff submitted an affidavit which contradicted the position she had taken in her complaint and EEOC affidavit. The court held that "parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *Hottinger v. Contel of Arkansas, Inc.,* 65 F.3d 172, 1995 WL 492892 *2 (8th Cir. 1995).

2. Paragraph 24 of the Complaint states "As a side note, and during an opportunity to meet with the Police Chief prior to his final decision, the plaintiff argued the failure to show any intent to perform any acts or omissions regarding these women. The Chief of Police, as soon as the plaintiff raised this issue, called the meeting short, ignored the issue of intent and a factual basis, **and demoted the officer-**

plaintiff..." *See* Complaint, ¶ 24 (emphasis added).

3. In his letter, Katz stated "[o]n June 4, 1996 I was advised by Chief St. Vincent that pursuant to the investigation I was adjudged to be guilty of the charge of sexual harassment based on a complaint by a third party.. **Chief St. Vincent told me that as discipline he is going to demote me to the rank of Police Officer.** I contacted my elected pension board representative, Sgt Bill Herman, who spoke to Chief St. Vincent, and related that the chief would allow 3 days, until June 7th, 1996, to decide **whether I would retire at the rank of Agent or accept the demotion**... I submitted the letter of retirement on June 6th..." Def. Motion., Ex. B, at 1 (emphasis added).

claims should be dismissed.[4]

### 2. Section 1983 Claims

#### a. Due Process

The Fourteenth Amendment requires due process of law if the government deprives citizens of life, liberty or property. *U.S. Constitution, Amendment XIV.* The Tenth Circuit has held

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

*Archuleta v. Colorado Department of Institutions, Division of Youth Services,* 936 F.2d 483, 490 (10th Cir.1991).

Although not clearly stated, plaintiff apparently claims denial of substantive due process,[5] arguing that the city's sexual harassment policy is unconstitutional on its face because it does not require a finding of intent. Katz also contended at oral argument that the city's sexual harassment policy, as applied to him, deprived him of due process, because during the predisciplinary hearing, St. Vincent did not inquire as to plaintiff's intent with respect to the alleged unlawful conduct, because St. Vincent privately met with the women in the department, and because St. Vincent "rail-

roaded" plaintiff through the internal affairs investigation.

Defendants move for dismissal of plaintiff's § 1983 claims for the failure to identify a custom, practice or policy that has caused plaintiff's injury. They also move to dismiss St. Vincent in his official capacity and raise the qualified immunity defense to any § 1983 claims against St. Vincent in his individual capacity.

In his second claim for relief,[6] plaintiff alleged that St. Vincent, through city policy practice and custom, "engaged in the direction and redirection of subordinate personnel to engage in acts and omissions contrary to their initial intention," (Complaint, ¶ 36); that St. Vincent "intervened in the operations of his Department for the purposes of achieving his ends which were contrary to the best interests of the plaintiff..." (*Id.,* ¶ 37); that "[a]fter St. Vincent was advised of a lack of both a factual and a legal basis to achieve the ends he sought in causing a demotion and lowering of plaintiff's pay ... [he] failed to remedy the violation ... and acted under color of authority by recreating the policy and the law and misshaping operations." *Id.,* ¶ 38. Katz further claims a constitutional deprivation "by denying this citizen the rights and privileges of citizens of each state and by abridging the plaintiffs [sic] privileges as well as due process and the equal protection of the laws." *Id.,* ¶ 40. Those vague and conclusory allegations fail to state any claim of violation of a constitutional right.

---

4. Because the court finds that plaintiff's EEOC charge was untimely and that his ADEA claims therefore should be dismissed, it does not address defendants' argument that plaintiff's claims under the ADEA are premised on a disparate impact theory, which is not recognized under the ADEA.

5. At oral argument, plaintiff clarified that he is not bringing denial of procedural due process claims with respect to the City's procedures.

6. As stated in the complaint, this claim is brought against defendant St. Vincent. *See*

Complaint, at 5. At oral argument, however, plaintiff stated that the Section 1983 claims were brought only against the city of Aurora and, additionally, that plaintiff was not seeking punitive damages against the city. Consequently, the court will not address St. Vincent's qualified immunity arguments. The defense is only available to those defendants sued in their personal capacities. *See Moore v. City of Wynnewood,* 57 F.3d 924, 929 n. 4 (10th Cir.1995) ("the defense of qualified immunity only applies to [defendants] in [their] individual capacit[ies].").

In his response to defendants' dispositive motion, Katz takes a different position, contending that St. Vincent violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because of his "lack of due process and his interpretation of what constitutes sexual harassment." Pl. Resp., at 6.

At the hearing on January 3, 2000, plaintiff clarified his § 1983 claims. Katz contended that his due process rights were violated because the Chief did not explore the issue of intent to engage in sexual harassment at the predisciplinary hearing. Katz also alleged other due process violations, claiming that St. Vincent had a private meeting with the women in the department and "railroaded" the investigation against plaintiff.

█ Municipalities and other local governments are persons subject to suit under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A municipality cannot be held liable under § 1983 where there is no underlying constitutional violation by any of its officers." *Wilson v. Meeks,* 98 F.3d 1247, 1255 (10th Cir.1996)(quoting *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir. 1993)); *see also City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806(1986); *Apodaca v. Rio Arriba County Sheriff's Dept.,* 905 F.2d 1445, 1447–48 (10th Cir.1990); *Watson v. City of Kansas City,* 857 F.2d 690, 697 (10th Cir. 1988). In *Heller,* for example, the Supreme Court reasoned that when a municipality is "sued only because [it was] thought legally responsible" for the actions of its officers, it is "inconceivable" to hold the municipality liable if its officers inflict no constitutional harm, regardless of whether the municipality's policies might have "authorized" such harm. *Heller,* 475 U.S. at 799, 106 S.Ct. 1571.

█ Thus, Katz first must show an underlying constitutional violation. He also must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton,* 997 F.2d at 782(internal citations omitted). Finally, Katz must allege facts to show that a policy or custom of the City and County of Denver was the "moving force" behind the constitutional injury. *Board of County Commissioners v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

Plaintiff has proffered no facts or cited any authority demonstrating that a City of Aurora municipal custom, practice or policy is violative of his constitutional rights. Plaintiff argues that the city's sexual harassment policy is unconstitutional on its face because it requires a finding of sexual harassment, whether the conduct is intentional or not. Plaintiff claims that his touching of females was accidental and not intentional. He maintains that proof of intent is required to find sexual harassment as a matter of law, and that St. Vincent should have inquired about and found intent to sexually harass in order to conclude that plaintiff had violated the city's sexual harassment policy. Failing to do so, Katz argues, renders the policy and its application unconstitutional.

The City's policy states

The City of Aurora shall not tolerate incidents of circumstances of discrimination, harassment or sexual harassment. The definition for discrimination, harassment or sexual harassment are as follows: Discrimination concerns the unfair or unequal treatment of a person, or group, (either intentional or unintentional) based upon race, color, age, national origin, religion, sex, disability or veterans status. Harassment is conduct which is intended to harass, annoy or alarm another person ... Sexual harassment is unwelcome sexual advances, requests or sexual favors, and/or other verbal or physical conduct directed at an individual because of that individual's gender when a) submission to such contact is either explicitly or

implicitly a term or condition of employment, or b) submission or rejection of such conduct by an individual is used as a basis for employment decisions affecting such an individual or c) such conduct has a purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment.

*See* Defs. Motion, Ex. A, at 2–3.

As the result of an internal investigation, Katz was found to have "pulled on the bottom of secretary Claudia Winger's sweater brushing [his] fingers against her buttocks" and to have touched Detective Burggraff on her buttocks on two occasions. Defs. Motion, Ex. A, at 5–6. Katz admitted that if Winger or Burggraff felt Katz had touched them inappropriately, or had created an environment that was intimidating to them, that meant Katz had created a hostile atmosphere. *Id.,* at 17, 19.

■ Hostile work environment sexual harassment occurs when conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2268–70, 141 L.Ed.2d 633 (1998); *Faragher,* 118 S.Ct. at 2283–84, 2292–93. After *Ellerth* and *Faragher,* the Tenth Circuit holds that "[f]or a hostile environment claim to survive a summary judgment motion, 'a plaintiff must show

that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1264 (10th Cir. 1998) (quoting *Davis v. U.S. Postal Service,* 142 F.3d 1334, 1341 (10th Cir.1998)).

■ In determining whether the conduct complained of was sufficiently severe or pervasive to have affected a term, condition or privilege of employment, a court must consider all pertinent circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295(1993); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987). Among the factors appropriately considered are whether the discriminatory conduct is frequent or severe, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* Not only must the conduct be sufficiently severe or pervasive to create a work environment that is objectively hostile or abusive, but it must also be perceived subjectively as abusive by the victim. "[I]f the victim does not subjectively perceive the environment as abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367.

Plaintiff claims he had no intention to sexually harass Brewer and Burggraff. He argues that Title VII required the City to find intent to sexually harass before he could be found to have violated the policy, relying upon *Meritor.* Plaintiff cites generally to Title VII and fails to provide the court with the specific statutory section of Title VII which he believes has been violated. Moreover, it was clear in *Meritor* that the intent of the alleged harasser is not an element of proof of hostile environment sexual harassment. Rather, the test

is whether the conduct complained of is subjectively and objectively sufficiently severe or pervasive and whether it alters the terms and conditions of the harassee's employment. Katz argues that the women did not come forward and file complaints against him, so they must not have thought they were subjected to sexual harassment. This argument ignores Katz' admissions that if the women felt intimidated or were bothered by his actions, then he did create a hostile environment. *See* Defs. Motion, Ex. A, at 17, 19.

The court finds that plaintiff has failed to allege a constitutional right which has been violated through the promulgation of the sexual harassment policy and St. Vincent's application of the policy to plaintiff. Plaintiff has not cited any authority for his proposition that a sexual harassment policy finding that both intentional and unintentional acts can constitute sexual harassment violates a constitutional right. Plaintiff also has not cited any authority for his contentions that a constitutional right was violated when St. Vincent met only with women in the department Katz or that St. Vincent railroaded Katz through the internal investigation. Accordingly, plaintiff's claims of due process deprivation based on the express language of the city's sexual harassment policy or the policy's application to his circumstances are without factual or legal foundation and should be dismissed.

### b. Equal protection

Plaintiff argues that his constitutional right to equal protection was violated because he was treated differently on account of his age. *See* Pl. Resp. at 6.[7] Defendants argue that plaintiff has failed to set forth any facts in support of an equal protection claim, and even if he had, the intended demotion was the result of plaintiff's own conduct in violation of the

City's policies so that there was a rational basis for the recommended discipline.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." *U.S. Constitution, Amendment XIV.* It is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Construction, Inc. v. Shawnee Civic & Cultural Dev. Authority,* 933 F.2d 853, 859 (10th Cir.1991). Courts recognize three distinct kinds of equal protection cases. One involves charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment. Another involves challenges to laws or policies alleged to make irrational distinctions. The third kind of equal protection claim involves a situation where the government acts against a blameless individual because a powerful state or local official harbors a malignant animosity toward the individual. *See e.g., Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("not a denial of equal protection unless there is shown to be ... an element of intentional or purposeful discrimination"); *Buckley,* 933 F.2d at 859 (equal protection clause applicable where there is "an element of intentional or purposeful discrimination" in state procedures).

Katz attempts to allege both age discrimination and equal protection claims in his first claim for relief. *See* Complaint, ¶¶ 25–34. He appears to contend that the chief conducted an investigation even though females did not complain about Katz, that the demotion decision was not supported by law, and that the acts and omissions of the City and St. Vincent were intentional. He then states "such acts and omission on the part of the defendant city are in derogation of plaintiff's rights to due

---

7. Plaintiff's reliance on *Johns v. Stewart,* 57 F.3d 1544 (10th Cir.1995) is misplaced. That case concerned a class action against the director of the Utah Department of Human Services, and the director of the Office of Recovery Services, alleging violations of the Social Security Act, the Fair Labor Standards Act, and the Utah Administrative Rulemaking Act. It does not concern the issues plaintiff presents here.

process of law and to the equal protection of the laws." (*Id.*, ¶ 20). Katz claims that "denying" him employment as a detective with the city was intentional. *Id.*

Katz does not allege that he was singled out as a member of a suspect class, nor does he challenge any City policy for making irrational distinctions. Rather, he appears to argue that St. Vincent's investigation against him, which resulted in the decision to demote him to police officer, was the result of "intentional or purposeful" application of the City's sexual harassment policy. He thus may conform to the third type of equal protection claim, alleging that there was " 'an element of intentional or purposeful discrimination' in the application of . . . [city] procedures so as to invoke the clause as an individual." *Buckley*, 933 F.2d at 859 (citation omitted). Assuming without deciding whether he has alleged "an element of intentional or purposeful" discrimination by defendants, plaintiff must also allege whether similarly situated individuals were treated differently. "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated."*Buckley*, 933 F.2d at 859.

Plaintiff refers to three other instances of alleged inappropriate behavior where no disciplinary action was taken. *See* Complaint, ¶¶ 12–14. Plaintiff appears to focus on the treatment of younger individuals compared to plaintiff. *Id.*, ¶¶ 15–16. In his response to defendants' dispositive motion, Katz claims that St. Vincent violated Katz' right to equal protection by treating him differently on account of his age. *See* Pl. Resp. at 6. At oral argument, he did not mention age, but repeated his contention that St. Vincent did not apply the sexual harassment policy correctly, that St. Vincent performed his own investigation

and that St. Vincent railroaded Katz through the internal investigation.

*Hennigh v. City of Shawnee*, 155 F.3d 1249 (10th Cir.1998) is dispositive of plaintiff's equal protection claims.[8] In *Hennigh*, a police officer contended that he was the only officer given discipline other than a reprimand for violation of the city's sexual harassment policy. Although Hennigh maintained that he was the first officer investigated under the sexual harassment policy and that he was the only officer disciplined in any fashion other than by reprimand, the court found that Hennigh had failed to "assert how Plaintiff was treated differently from those similarly situated, i.e., those accused of committing sexual harassment." *Hennigh*, 155 F.3d at 1257. Since an essential element of an equal protection claim is showing treatment different from those similarly situated, the trial court's dismissal of his claim was upheld. *Id.* Because Katz has failed to provide any evidence of disparate treatment of others accused of sexual harassment as required by *Hennigh*, his equal protection claims also must be dismissed.

### 4. Intentional Infliction of Emotional Distress (Outrageous Conduct)

#### a. Notice

Defendant St. Vincent argues that this court lacks jurisdiction over the claim against him because Katz has not complied with the notice requirements of the Colorado Governmental Immunity Act ("GIA") in COLO. REV. STAT. § 24–10–109 (1999). St. Vincent also argues that the claim sounds in tort and that St. Vincent is immune from liability.

The Colorado GIA provides as follows:

medical school who sued the school, university regents, the admissions committee, and the co-chairpersons of the committee, challenging policy that, all other things being equal, school will favor long-term residents over short-term residents in its admissions process.

---

**8.** For his equal protection argument, Katz relies upon *Buchwald v. University of New Mexico School of Medicine, et al.*, 159 F.3d 487 (10th Cir.1998). *Buchwald* also is distinguishable on its facts. It concerned a rejected applicant for admission to state university

Actions Against Public Employees—Any action against a public employee, ... which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant and which arises out of injuries sustained from an act or omission of such employee which occurred or is alleged in the complaint to have occurred during the performance of his duties and within the scope of his employment, unless the act or omission causing such injury was willful and wanton, shall be subject to the following requirements and limitations .... a) compliance with ... 24–10–109 shall be a jurisdictional prerequisite to any such action and failure of compliance shall forever bar any such action against a public employee ... Any such action against a public employee shall be commenced within the time period provided for that type of action in articles 80 and 81 or title 13, C.R.S., relating to limitation of actions, or it shall be forever barred.

§ 24–10–118(1) and (1)(a), COLO. REV. STAT. (1999).

Defendants argue that Katz failed to substantially comply with the required Colorado GIA written notice. The GIA requires the claimant to set forth his name and address and that of his attorney, as well as "[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of...[t]he name and address of any public employee involved...[a] concise statement of the nature and the extent of the injury claimed to have been suffered...[and][a] statement of the amount of monetary damages...requested..." § 24–10–109, COLO. REV.STAT.(1999).

Defendants argue that the letter Katz wrote to the city attorney, in which he stated that the letter was his notice under § 20–10–109, does not mention damages other than a "significant salary decrease" and that therefore plaintiff has not substantially complied with the GIA. See GIA Notice, Defs. Motion, Ex. B. Further, defendants argue that emotional distress damages are not claimed, and plaintiff has not mentioned emotional distress or outrageous conduct in the notice. In his response, plaintiff argues that his notice clearly states that St. Vincent's conduct created a hostile work environment, that St. Vincent "suspended my permission to work in an off duty capacity because he did not like my wife's occupation" and that the action taken against him was unjust. See Pl. Resp., at 11. He also argues that St. Vincent's conduct was outrageous because the sexual harassment policy is contrary to law, because St. Vincent found that Katz had engaged in sexual harassment, because St. Vincent "influenced the internal affairs unit," and because the Chief "foisted and arranged [Katz's] constructive discharge." Id., at 12. Defendants contend in their reply that plaintiff cannot complain of a hostile atmosphere since he admitted that he contributed to a sexually hostile environment. Defs. Motion, Ex. A, at 17–19.[10]

▮ The court finds that substantial compliance with the notice requirements of the GIA is required for tort claims against public entities under Colorado law. See Woodsmall v. Regional Transportation District, 800 P.2d 63, 68 (Colo.1990). "Substantial compliance" means that the notice is timely, in writing, and evidences a good faith effort to include each item of information set out in § 24–

---

**10.** In the predisciplinary hearing, Katz said "[i]f she really felt that I touched her inappropriately and I created a hostile atmosphere, then yes, that's what I did. I mean that I created a hostile atmosphere." Defs. Motion, Ex. A, at 17. Later, Katz responded "yes" to the Chief's question "So you would agree

with me that as it relates to the sexual harassment policy that if you created an environment that was intimidating to her, a work environment that was intimidating or hostile to her, then you're guilty of that particular directive violation." Id., at 19.

10–109. *Cassidy v. Reider*, 851 P.2d 286, 288 (Colo.App.1993). For purposes of this recommendation, the court finds that plaintiff's notice, although not a model of clarity, adequately informs St. Vincent that Katz intends to pursue claims against St. Vincent related to the charges of sexual harassment brought against Katz which resulted in his separation from employment.

 Notwithstanding his GIA notice, however, plaintiff has failed to state a claim of intentional infliction of emotional distress or outrageous conduct. A claim for intentional infliction of emotional distress or outrageous conduct sounds in tort. *Zukowski v. Howard, Needles, Tammen and Bergendoff, Inc.*, 657 F.Supp. 926, 929 (D.Colo.1987). In *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970), the Colorado Supreme Court adopted the Restatement (Second) of Torts § 46, comment d (1965) which provides that liability may be found only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg*, 476 P.2d at 756. Although the jury ultimately determines whether the conduct in question is outrageous, it is for the court to decide, in the first instance, whether the issue should be submitted to the jury based on whether reasonable persons could differ on the conduct being outrageous. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo.1988). Discharge from employment does not rise to the level of outrageous conduct. *Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1524 (D.Colo.1987). It is the manner of the discharge and the employer's conduct which is critical to a finding of outrageous conduct. *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 385 (10th Cir.1988). Allegations by an employee that he was dismissed summarily or without cause or without following the employer's policies are insufficient to state an outrageous conduct claim. *Therrien*, 670 F.Supp. at 1524.

In support of his emotional distress claim, plaintiff alleges that St. Vincent "engaged in extreme and outrageous conduct," (Complaint, ¶ 44), causing plaintiff "severe emotional distress" (*id.*, ¶ 48) and that the conduct was "[s]o extreme in degree that a reasonable member of the community would regard the aforesaid conduct as atrocious, going beyond all bounds of decency and utterly intolerable within this civilized community" (*id.*, ¶ 49), and was "[a]ttended by circumstances of fraud, malice or willful and wanton conduct, thereby entitling the plaintiff to exemplary damages." *Id.*, ¶ 52.

Plaintiff's allegations are mere conclusory statements which do not adequately state a claim of outrageous conduct. At most, plaintiff argued at the hearing that he was "railroaded" by Chief St. Vincent. Plaintiff does not allege facts in support of his allegation that he was "railroaded," and he does not allege any facts to show that the manner of his termination was particularly abusive. *See Grandchamp*, 854 F.2d at 384.

Plaintiff here retired rather than accept a demotion. He was not discharged by the City or St. Vincent, but claims he was constructively discharged. The court finds that although Katz believes the actions taken against him were unfair and illegal and although he purports to state causes of action against defendants under federal law, the allegations would not cause an average member of the community to exclaim "Outrageous!" Accordingly, the court finds, as a matter of law, that plaintiff has failed to provide any evidence that the facts surrounding the sexual harassment charges and the facts leading up to and including his alleged constructive discharge were outrageous.

**b. Immunity**

Even if plaintiff had evidence to supply the requisite elements of the tort of intentional infliction of emotional distress or

outrageous conduct, St. Vincent is immune from suit. It is undisputed that the Colorado GIA provides immunity to governmental employees as follows:

A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton; except that no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24–10–106(1).

§ 24–10–118(2)(a), COLO. REV. STAT. (1999)

■■■ A plaintiff may attempt to avoid the immunity provisions of the GIA if he can show that a defendant's conduct was "willful and wanton." The phrase "willful and wanton" is not defined in the Colorado GIA. Courts addressing the issue have applied the definition set forth in Colorado's exemplary damages statute, which defines the term as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *See Cossio v. City and County of Denver*, 986 F.Supp. 1340, 1349 (D.Colo.1997)(internal citations omitted).

The burden is on the plaintiff to show that a defendant is not immune; mere allegations that conduct is "wilful and wanton" are insufficient. *Zerr v. Johnson*, 894 F.Supp. 372, 375–76 (D.Colo.1995). In support of his claims for willful and wanton behavior, plaintiff argued at the hearing that St. Vincent's application of the sexual harassment policy without finding intent on Katz' part is willful and wanton behavior, as are St. Vincent's actions meeting with women alone in the department, and railroading Katz through the internal affairs investigation. Plaintiff's argument is a rehash of his intentional infliction of emotional distress claim which fails to set forth any allegation that St. Vincent's actions were willful and wanton under § 24–10–118, COLO. REV. STAT. (1999). The claim against St. Vincent should therefore be dismissed.

### IV. Recommendation

For the reasons set forth above, it is

RECOMMENDED that Defendants City of Aurora and St. Vincent's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(1)[ sic] [filed August 31, 1999] be **granted.** It is further

RECOMMENDED that all of plaintiff's claims be **dismissed in their entirety.**

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

January 20, 2000.